SOL FURSMIDT, Respondent, *v.* HOTEL ABBEY HOLDING CORP., Appellant.

First Department, May 10, 1960.

*Milton Loewe* of counsel (*Finkelstein & Robinson,* attorneys), for appellant.

*Maurice Fixel* of counsel (*Fixel & Rose,* attorneys), for respondent.

RABIN, J. The plaintiff and his father had been rendering valet and laundry services at the Hotel Abbey for a great many years. In connection with the rendition of such services the plaintiff had been allocated space in the hotel basement. On February 1, 1958 the plaintiff entered into an agreement in writing with the defendant, the owner of the hotel, which provided for the plaintiff to render such services for an additional three-year period for which the defendant was to receive compensation of $325 per month. This agreement provided in Paragraph " 5 " thereof as follows: " It is distinctly understood and agreed that the services to be rendered by the second party [plaintiff] shall meet with the approval of the first party [defendant], who shall be the sole judge of the sufficiency and propriety of the services."

In September, 1958 the defendant informed the plaintiff that he was to discontinue his services as of October 1, 1958. The plaintiff thereafter removed from the premises and discontinued his services. Upon such discontinuance the valet and laundry service was resumed by a third party who paid to the defendant the sum of $250 per month as consideration for the concession.

The plaintiff claims that the defendant had no right to terminate the contract and in so doing it breached the contract. The defendant defends saying that the services did not meet with its approval and were unsatisfactory. It counterclaims for damages which it claims it sustained by reason of plaintiff's breach of the contract in failing to render adequate and proper service.

The defendant takes the position that it had a right to terminate the agreement if it genuinely and honestly felt that the services rendered were unsatisfactory to it and did not meet with its approval, urging that under the contract it was to be the sole judge of the " sufficiency and propriety of the services." Accordingly it urges that it was not for the court or a jury to pass upon the reasonableness of such conclusion if in fact it was a conclusion honestly arrived at by it.

The trial court disagreed holding that it was not enough that the defendant be dissatisfied, even though such dissatisfaction

be not feigned, but implicit in law was a requirement that such dissatisfaction be reasonably grounded. Consequently, the court in its charge gave to the jury for resolution not only the question of whether the defendant was in fact dissatisfied but also the question as to whether such dissatisfaction was reasonable. Under the court's charge therefore even though the jury found the dissatisfaction to be genuine it would be obliged to find for the plaintiff if nonetheless it found that such dissatisfaction had no reasonable basis. In other words the court substituted the judgment of a reasonable man in place of the judgment of the defendant as called for in the contract.

Provisions in agreements calling for performance to the satisfaction of a party fall into two general categories. In contracts relating to operative fitness, utility or marketability the provision " is construed as a matter of law as imposing only the requisite of satisfying a reasonable man " (3 Williston, Contracts [rev. ed.], § 675A, p. 1946). For example, such a construction has been given to " satisfaction " provisions where the performance called for was the installation of machinery (*Hummel* v. *Stern,* 21 App. Div. 544, affd. 164 N. Y. 603), and where repairs were to be made to a boiler (*Duplex Safety Boiler Co.* v. *Garden,* 101 N. Y. 387).

On the other hand a literal construction of the " satisfaction " provisions is made where the agreements provide for performance involving " fancy, taste, sensibility, or judgment " of the party for whose benefit it was made (10 N. Y. Juris., Contracts, § 302, p. 263). Such a result obtains in cases calling for performance to one's satisfaction in the making of a garment, the giving of a course of instruction, the services of an orchestra, the making of recordings by a singer and the painting of a portrait (see cases cited in 2 Clark, New York Law of Contracts, § 928, p. 1417).

The resolution of the issue here presented lies with the determination of whether the instant agreement is one relating to operative fitness, utility or marketability or one involving fancy, taste, sensibility or judgment. We find that it comes within the rules applicable to the latter class and thus conclude that the court erred in its charge.

In reaching this determination we recognize that the performance here called for does not lie at either extreme of the respective categories. However, it is by far closer to the category involving taste or judgment than the one where " satisfaction " is complied with by reasonable performance. Such a conclusion is inescapable when the agreement is examined in the light of its purpose.

This agreement provided that the defendant was to exercise strict control and direction of almost every aspect of the plaintiff's operation. The prices were to be fixed by the defendant; disputes with hotel guests were to be finally resolved by the defendant; the specific hours of service were to be established by the defendant " to conform to the convenience of its guests "; the plaintiff's employees had to be approved by the defendant as were their uniforms; and all the billing was to be done through the defendant as though it were rendering the services to the guests.

Thus, it appears that the primary and overriding objective of the defendant in entering into this agreement was to ensure to its guests proper, efficient, courteous and reasonable valet and laundry facilities as an integral part of the over-all personal services rendered by the hotel to the end that the good will of the guests be retained. It becomes clear therefore that the performance here called for is much removed from that involving mechanical fitness, utility or marketability. In such cases there is a " positive, objective standard " against which the performance may be measured. (*Wynkoop Hallenbeck Crawford Co.* v. *Western Union Tel. Co.*, 268 N. Y. 108, 112.) Contra in cases involving taste and judgment such standards of reasonableness cannot be established. In this case the defendant did not bargain for a particular type of pressing, stitching or laundering but rather for a relationship between the plaintiff's organization and the hotel's guests as would protect and enhance the good will so essential to the operation of the hotel business. No objective standards of reasonableness can be set up by which the effectiveness of the plaintiff's performance in achieving the effect sought can be measured. It is for that reason that in cases of this nature the honest judgment of the party rather than that of a jury is all that is required and it was in order to make sure that that would be the measure of performance that the defendant inserted in the contract that it was to be the sole judge.

It was therefore error for the trial court to give to the jury the question of the reasonableness of the defendant's asserted dissatisfaction. Sufficient that the jury be satisfied that it was a dissatisfaction honestly arrived at. While in determining the question as to the *bona fides* of the defendant's dissatisfaction, evidence as to the quality of the plaintiff's services may well be admissible as having probative value, the ultimate and only question to be decided by the jury with respect to the propriety of the defendant's action in terminating the agreement is whether the defendant's dissatisfaction was bona fide or feigned.

It may very well be that the charge of the court is correct for the purpose of determining whether the plaintiff breached the agreement so as to entitle the defendant to damages on its counterclaim as distinguished from its right to terminate the contract. Honest dissatisfaction on the part of the defendant, although entitling it to terminate will not, in and of itself, entitle it to recover damages on its counterclaim. Such determination will depend on the facts surrounding the manner of the plaintiff's performance in relation to what he was obliged to do under the agreement and accordingly we do not pass on that phase of the case at this time.

Accordingly, the judgment should be reversed on the law and a new trial ordered, with costs to abide the event.

McNALLY, STEVENS and BERGAN, JJ., concur with RABIN, J. P.; VALENTE, J., dissents and votes to affirm in memorandum: Under the type of contract in this case, the court properly submitted to the jury the question of whether the termination of the contract was made in good faith and whether such conduct was unreasonable. I would therefore affirm the judgment.

Judgment reversed upon the law and a new trial ordered, with costs to abide the result of the final judgment in the action.