Jacob Markowitz, J.
This is an application by one John D. Murchison, a stockholder of Alleghany Corporation (hereinafter referred to as “ Alleghany ”), for an inspection of the corporation’s stock book, or for an order directing the company and its transfer agent to furnish petitioner, at his expense, with a list of the stockholders and their names and addresses.
Petitioner alleges that he is the record owner of 5,000 shares of the corporation’s convertible preferred stock and that he has been such record owner since March 15, 1960; that he served a written demand pursuant to section 113 of the Stock Corporation *291 Law for inspection of the stock book on the company and its transfer agent on or about September 22, 1960, and that the demand was refused. Section 113 of the Stock Corporation Law gives any stockholder the right to inspect a corporation’s stock book “ provided (a) that such inspection shall not be for the purpose of communicating with stockholders in the interest of a business or object other than the business of the corporation, and (b) that such stockholder * * * has not within five years sold or offered for sale any list of stockholders of such corporation or any other corporation, or aided or abetted any person in procuring any stock list for any such purpose ”.
It appears that petitioner and his brother own 56,336 shares of the convertible preferred stock and claim to own the voting rights in an additional 250,717 shares of common stock.
According to the petition, the inspection was sought for “ use in communicating with the stockholders of Alleghany and in the solicitation of requests and proxies from the stockholders in connection with a special meeting of stockholders for the election of new directors of Alleghany prior to its next annual meeting, or, if such special meeting for any reason shall not be held, in connection with the election of new directors at the next annual meeting of Alleghany scheduled under its by-laws to be held on May 1, 1961.”
It is well settled that a stockholder is entitled to inspect the corporation’s stock book in order to be able to communicate with other stockholders and seek to persuade them, by solicitation of proxies and otherwise, to oust the existing directors and management and substitute a slate nominated or approved by the stockholder seeking the inspection (Matter of Durr v. Paragon Trading Corp., 270 N. Y. 464; Matter of Martin v. Columbia Pictures Corp., 282 App. Div. 686; Matter of Joslyn [Universal Labs.], 191 Misc. 512, affd. 273 App. Div. 945; Matter of Ditisheim, 96 N. Y. S. 2d 622). The fact that the existing management may be innocent of charges of mismanagement made by the petitioning stockholder is not a valid reason for denying inspection of the stock list (Durr v. Paragon Trading Corp., supra, Matter of Joslyn [Universal Labs.], supra).
The application is resisted on the ground that it is not made .in good faith but “ for improper purposes inimical to the interest of Alleghany Corporation and all of its stockholders other than petitioner, his brother Clint W. Murchison, Jr., and their associates ’ ’.
Respondent Alleghany has submitted voluminous affidavits and exhibits, among which are the affidavits of Charles T. Ireland, Jr., an executive vice-president of Alleghany Corpora *292 tian, a director of Investors Mutual, Inc., and a director of Investors Diversified Services, Inc. [hereinafter called IDS], and a member of the finance and law committee of the board of directors of IDS; and the affidavit of Randolph Phillips, a directors of IDS from April 19, 1960, who is also chairman of the IDS finance and law committee. In these affidavits it is claimed that the purpose of the inspection is to enable petitioner and his associates to ascertain the names and addresses of holders of large blocks of stock so that petitioner and others may negotiate purchases of stock or ’ acquisitions of voting-rights, by options or otherwise, in private transactions, without the running up of the market price of the stock which would result from purchases on the stock exchange.
Alleghany urges that petitioner’s alleged intention to use the list in order to be able to negotiate private purchases of large blocks of stock, bars him from the right to the inspection sought. The case of Matter of Newman v. Smith (263 App. Div. 85), cited by Alleghany as authority for its contention, is clearly distinguishable. The actual holding in that case, in which .all five Justices concurred, was that because the defendant was a joint-stock association, the statutes providing for inspection of corporate stock books were inapplicable. By way of dictum, three of the five Justices expressed the view that, even if there were a statute authorizing the inspection, “ in the exercise of a sound discretion we should feel constrained, under,the circumstances of this particular proceeding, to deny” the inspection (p. 87, italics supplied). The three Justices pointed out that petitioner was offering stockholders only 20% to 25% of the market value of the net assets applicable to their shares and that this did not appear to be an offer which would benefit the corporation or its stockholders. In the instant case, however, there is nothing- to indicate that, if purchases of large blocks at private sales should be made by petitioner and his associates, the prices would be unfair and not beneficial to the stockhoders or detrimental to the corporation. In the court’s view, the possibility that petitioner, and others associated with him, may be enabled, as the result of inspecting the stock book, to negotiate purchases of large blocks of Alleghany stock or voting options, through private sales or negotiations, is not in itself sufficient to, deprive him of the statutory right of inspection.
Alleghany further alleges that petitioner in seeking to acquire control of Alleghany is motivated by a desire to use that control, to the detriment of Alleghany, for the purpose of obtaining control of IDS, a corporation, which, with affiliated companies, is “ the largest investment complex in this country ” and “ man *293 ages approximately three billion dollars worth of assets ” and once again resuming what is claimed to be his (and his associates’) exploitation of IDS. It is also claimed that in that manner further inquiry and investigation of alleged improprieties and wrongdoings by the petitioner and his associates during their period of control and stewardship of IDS from 1955 to early 1960 will be prevented, to the detriment of Alleghany.
At the present time, Alleghany owns 47%% of the voting stock of IDS and thus possesses working control of IDS.
An examination of the papers indicates that in the Summer of 1960 a finance and law committee of IDS was organized for the purpose of checking into charges made against the Murchisons and others, growing out of an alleged request by or on behalf of the Murchisons, dealing with deposits in various banks.
The finance and law committee of IDS, in the activities of which Charles T. Ireland, Jr., has sworn that he was an active participant, submitted to the board of directors of IDS of which Ireland is a member, charges against the Murchisons and others, growing out of an alleged request by or on behalf of the Murchisons that the Bank of Delaware, depositary of Investors Mutual, should make deposits of its own funds (i.e., funds of the Bank of Delaware) in certain banks in Texas and Philadelphia and in a branch of a Canadian bank in New York, and allegations that the Murchisons and others conspiring with them profited thereby. These charges are for convenience hereinafter referred to as “ the Bank of Delaware charges ”.
In addition to those previously mentioned, another member of the finance and law committee was Fred Kirby, son of Allan P. Kirby, chairman of the board and president of Alleghany Corporation.
Acting through Phillips, and possibly others, the finance and law committee of IDS advised Investors Mutual of the Bank of Delaware charges. Investors Mutual was requested to institute a lawsuit thereon against the Murchisons and others.
The board of directors of Investors Mutual appointed a special committee of its directors to investigate the charges and said committee has in fact made such an investigation. Three other incorporated funds which, like Investors Mutual, have contracts with IDS, employing IDS as an investment advisor, also created through action of their respective boards; special committees to investigate charges and the four special committees in turn created a “ Joint Special Committee” to make an investigation and to report.
At the request of the joint special committee, petitioner John D. Murchison appeared before it and its counsel on October 7, *294 1960, and answered all questions put to him. He and his brother, Clint W. Murchison, Jr., also authorized the correspondent banks in which the IBank of Delaware had deposited its own funds and which were named in the Bank of Delaware charges to give to that committee any relevant information requested by it or its counsel, and the committee or its counsel have had interviews with officers of and received information from all of said banks.
Counsel who acted for said committee in such investigation were Mackall, Crounse, Moore, Helmey and Holmes, of Minneapolis. In addition, the committee has been advised by Davis, Polk, Wardwell, Sunderland and Kiendl, of New York.
On November 16, 1960, at a meeting of the board of directors of Investors Mutual, the special committee filed its interim report, approved and concurred in by said joint committee, with respect to the Bank of Delaware charges. It is asserted that Ireland was present at that meeting (which is not denied by Ireland — see Ireland affidavit, Dec. 7, 1960, p. 4).
On November 21, 1960 defendant Alleghany Corporation through its counsel submitted to the court in the Murchison proceeding the affidavit and supplemental affidavit of Ireland, sworn to November 15, 1960, asserting the Bank of Delaware charges.
On November 25, 1960, nine days after the meeting of the board of directors of Investors Mutual at which the report of its special committee was filed, Ireland swore to a further affidavit in opposition filed that day in the Harrington proceeding, in which, in paragraph 6, he incorporated his affidavit and supplemental affidavit, each dated November 15,1960, “ with the same force and effect as if fully set forth herein.” His separate affidavit of November 25, 1960, in the Harrington proceeding makes no mention whatsoever of (1) the investigation by the special committee of Investors Mutual or (2) its report to the board of directors of Investors Mutual supported by opinions of counsel, in effect exonerating the Murchisons of the Bank of Delaware charges made in his earlier affidavits.
On December 2, 1960 the board of directors of Investors Mutual at a special meeting in Minneapolis approved and adopted the interim report of its special committee theretofore filed at a meeting of that board held November 16, 1960.
Said report refers to the investigation made by the special committee of the board of Investors Mutual and by the joint special committee and states that, based upon that investigation, advice of counsel and other appropriate consideration, the committee has concluded that (1) Mutual’s moneys were not immo *295 bilized at any time and its funds remained intact at all times; it was the plan and effort of the administrators of the funds to maintain no excessive balances and in this it appears they were successful; (2) Mutual’s moneys were not “ re-deposited ” by the Bank of Delaware with any of the four banks named; the transfer by the Bank of Delaware of its own funds in establishing correspondent bank accounts in the four banks was suggested for the benefit of Mutual and resulted in assistance to Mutual in obtaining private placements, in promoting sales, as well as profiting itself by gaining participation in loans originated by such correspondent banks; (3) the claim of secret profits by the Murchisons is not supported by the report or the investigation; and the ‘ ‘ claims of secret profit are without merit ’ ’.
The afore-mentioned facts pertaining to the special committee of the board of directors of Investors Mutual were first brought to the court’s attention by virtue of an affidavit by Eli Whitney Debevoise, sworn to December 6, 1960.
Additional affidavits are submitted which further substantiate the views set forth in the Debevoise affidavit.
The supplemental affidavit of Charles T. Ireland, Jr., sworn to the 7th of December, 1960, does not dispute the findings of the special committee of the board of directors of Investors Mutual nor in any way strengthen the respondent’s position.
It is regrettable that information dealing with the activities of the special committee of Investors Mutual, its interim report and approval by the board of directors of Investors Mutual, was not called to the attention of the court by the representatives of respondent, particularly inasmuch as they were aware of same and some of them participated in the activities of the committee or were present at directors’ meetings of Investors Mutual where the report of the special committee was discussed. Instead, they repeated the charges, knowing full well that a committee of the company had acted in regard to the matter and had filed its report.
It is interesting* to note that in the interim report of the special committee, dated November 15, 1960, and which as heretofore indicated was approved by the entire board on December 2, 1960, the two law firms — Mackall, Crounse, Moore, Helmey and Holmes, of Minneapolis, and Davis, Polk, War dwell, Sunder-land and Kiendl, of New York City-—both concluded that there was not sufficient evidence to provide a legal or meritorious basis for action by Mutual as suggested. The special committee likewise recommended that no action should be commenced.
Respondents’ claim that a hearing is necessary to establish that petitioner’s purpose in endeavoring to gain control of *296 Alleghany is to cover up evidence of past wrongdoing on the part of petitioner and his associates in IDS 'and their desire to continue the same and to harm Alleghany in other ways. Respondents further claim that petitioner and his associates plan, if they obtain control, to oust the present management with one subservient to them and thus be free to resume the alleged past exploitation of IDS for their private advantage. Such a contention is a complete non sequitur and is too speculative in nature to create a triable issue justifying a reference as to petitioner’s motives and good faith.* A factual inquiry into the voluminous matter requested by Alleghany as to what has occurred in the past, for the purposes of determining1 the future intentions of petitioner, would have to be so far-reaching, complex, and prolonged that it could probably not be completed in time to be of any use at the next annual meeting of the stockholders. Particularly is this so when we consider that it took the committee of Investors Mutual over 16 days to hear witnesses with respect to only an infinitesimal part of IDS dealings. The court is unaware, despite extended research, of any case where such an inquiry was directed in connection with an application to inspect the stock book, nor is any cited by counsel. In the court’s opinion, the application to inspect the corporate stock book may not be successfully resisted purely upon the basis of the speculative and conjectural claims made here by Alleghany as to petitioner’s future intentions.
The present management of Alleghany and officers of IDS has had, at least since May of this year, to uncover the claimed misdeeds of Murchison and their associates in IDS. Despite their concentrated, intensive efforts, all that is shown in the papers are generalities and a claim that deposits in some banks were inferentially and indirectly used for the benefit of the Murchisons. These claims, it has been established, are without basis in fact (see report, special committee of Investors Mutual). The assertions and claims do not justify a denial of the relief sought by petitioner. There would even be serious doubt that a denial would be justified even if there were some question of dealing with a small segment of bank deposits, considering the fact that the assets controlled by IDS are three billion dollars.
It is to be borne in mind that the court on this application is not passing upon a five-year period of stewardship of the Murchisons and IDS. The fact that the hearing or reference suggested by Alleghany might be extended, prolonged and far-reaching would not, in and of itself, be the basis for its denial. It is obvious, however, that an attempt to try the claimed issues before a Referee would be the equivalent of a trial against the *297 Murchisons for malfeasance, misfeasance and wrongdoing in the five-year operation' of IDS, without the benefit of pleadings, examinations before trial, bills of particulars, and other appropriate steps. If at this stage the Alleghany and IDS management has been unable to uncover more than it shows in the papers (even assuming that at a later date there may be other acts which might form the basis for actions against the Murchisons), it would seem that a denial of the application for an examination of the stock lists of Alleghany would be contrary to the intent and express provisions of the law. The obtaining of stock lists for the purpose of a proxy fight should be encouraged where it is genuine. Disclosure by all parties to the stockholders of all of the fhets can only serve the best interest of a corporation. To prevent one from knowing who the stockholders are, so that one’s position cannot be effectively presented, is not in keeping with the right of stockholders to be apprised of the positions of competing groups for management. What may happen in the future, in the event one or the other side prevails, is entirely up to the stockholders.
The motion is granted and respondents directed to furnish petitioner, at his expense, with a list of Alleghany stockholders, their addresses, and the number of shares held by each stockholder, and to furnish, at reasonable intervals and at petitioner’s expense, copies of the daily transfer sheets until the next annual stockholders’ meeting or a prior special meeting of the stockholders.
With respect to the companion motion of petitioner Harrington, the owner of approximately 100,000 shares of Alleghany Corporation common stock, wherein he seeks the same relief as the petitioner herein, the grounds urged by respondents for a denial of the relief sought are of an insufficiently persuasive nature to warrant a denial of his motion. The mere fact that petitioner Harrington is a member of the so-called “ Better Management Committee ” of which the Murchisons are also-members is insufficient to withhold the relief to which he is ' clearly entitled; this would be true even were the court to deny Murchison’s application. The motion is in all respects granted.
With respect to the application of Randolph Phillips for an order permitting him to intervene as a party respondent, the application is denied. No necessity has been shown for the desired intervention and, in addition, the vigorous opposition of Alleghany Corporation to the applications herein demonstrate that Phillips ’ interests have been more than adequately protected.