Richard O. **LOENGARD**, Plaintiff,

v.

**METAL & THERMIT CORPORATION,**
Defendant.

United States District Court
S. D. New York.
April 12, 1962.

Strasser, Spiegelberg, Friedland and Frank, of New York City, for plaintiff. George Spiegelberg, Frederick Lubcher, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer and Wood, New York City, for defendant. Frederick B. Boyden, Merton Sarnoff, New York City, of counsel.

DAWSON, District Judge.

This action was brought by the plaintiff, a former vice-president and director of the defendant, to recover supplementary retirement benefits aggregating $10,000, due under an agreement dated April 22, 1957, which the defendant al-

legedly wrongfully terminated in March 1958.

The Court finds the facts to be as follows:

The plaintiff, a graduate engineer, was first employed by the defendant in 1919. In January 1955, following thirty-five years of continuous service, plaintiff became a vice-president and during April, 1955 a director of the defendant and he continued to serve in those capacities until the annual meeting of defendant's stockholders in April 1957.

Prior to the 1957 annual meeting a proxy fight took place between American Can Company, which owned about 21% of the outstanding common stock of the company, and the Rogers family, which held about 18% of the outstanding common stock. The plaintiff, who was himself a stockholder,[1] actively supported the Rogers group in the proxy contest and was a candidate for director on their slate. At the 1957 annual meeting the American Can Company interests elected eight directors while the Rogers group, through cumulative voting, elected only four of the twelve directors. The plaintiff was not one of the directors elected and he was not re-elected as an officer.

On Monday, April 15, 1957, the first business day following the annual meeting, the plaintiff met with Mr. Martin, the president of the defendant. Mr. Martin asked the plaintiff whether under the circumstances he preferred to resign or retire, and the plaintiff replied that he preferred to retire. Following ten days of negotiations over the form of an agreement, Mr. Martin sent to the plaintiff a letter which is the subject of the present action. This letter, which was dated April 22, 1957, stated that it would "constitute an acceptance" of plaintiff's retirement of April 15, 1957. It provided that the defendant would pay to the plaintiff "a supplementary retirement benefit at the rate of $2,400 per annum in monthly installments of $200 each until June 30, 1962 * * *."[2] The letter contained the following termination provision:

"The Corporation's commitments under the foregoing paragraph of this letter may be terminated if any action on your part is detrimental in any way, in the judgment of the Corporation's Board of Directors, to Metal & Thermit Corporation or any of its present or future subsidiaries or affiliates. Without limitation of the foregoing, action on your part may be deemed detrimental as aforesaid if it involves engagement or participation, directly or indirectly, in any business enterprise that is competitive at that time to any event with the Corporation or any of its present or future subsidiaries or affiliates, or participation in any litigation that in any way relates to or involves the Corporation or any such subsidiary or affiliate, or the rendering of services by you as a consultant or adviser to any present or future competitor of the Corporation or of any of its present or future subsidiaries or affiliates, or the disclosure by you of any of their formulae, practices or other data that are not a matter of public record."

The letter was sent in duplicate to be signed and accepted by Mr. Loengard. It was accepted by him on April 24, 1957 and he began receiving payments the following month.

Subsequently, in 1958, as a result of continuing disagreements, another proxy fight took place. The plaintiff, who had continued to be a stockholder in the defendant, again actively supported the

1. The plaintiff owned 1,384 shares of common stock in his own name and an additional 1,200 shares as trustee. American Can Company and the Rogers family owned approximately 170,000 and 150,-000 shares of common stock respectively.

2. The plaintiff was entitled to a normal retirement benefit of $801.81 per month under another agreement. These payments are not in dispute here.

group led by the Rogers family. As soon as defendant's president, Mr. Martin, learned of this fact, on March 5, 1958, he notified the defendant's treasurer to cancel the plaintiff's supplementary retirement benefits and the plaintiff received no payments thereafter. At the annual meeting held on April 10, 1958 the American Can Company interests were again successful and only three directors supported by the Rogers group were elected. At a meeting of the defendant's directors, held on April 28, 1958, a majority of the Board approved the president's act in stopping the plaintiff's supplementary retirement benefits. The reason for the termination, as reflected in the minutes of the Board, was that

> "Mr. Loengard had become a member and a nominee of the Stockholders Committee for Independent Management in Opposition to Present Management of Metal & Thermit Corporation and that this Committee had conducted a proxy campaign in opposition to the management in connection with the annual meeting of stockholders held on April 10, 1958."

The resolution of the Board stated that this act of the plaintiff was "detrimental to this corporation and that accordingly the action of the President * * * is approved, ratified and confirmed * *." Since the plaintiff's supplementary retirement benefits were thus terminated, he brought this action for breach of contract. If the contract had not been terminated the plaintiff would have been entitled to fifty additional monthly payments at the rate of $200 a month.

### Discussion of Law

At the outset the defendant contends that the letter agreement in question is no contract at all because of lack of consideration. The defendant argues that following the 1957 annual meeting the plaintiff ceased to hold office and therefore he had no position from which to retire and that his purported act of retirement was insufficient consideration. This argument cannot withstand analysis. In the first place, it is by no means clear that the employment of the plaintiff, who had been with the company as an engineer for many years, was immediately terminated by reason of his failure to be re-elected as a director and officer. However that may be as a matter of law, it is sufficient for purposes of consideration that both parties believed that the plaintiff held some position or right which he would forego after which he would receive a retirement allowance. The negotiations between the plaintiff and Mr. Martin, and the terms of the letter agreement, show clearly that the plaintiff was surrendering some mutually recognized right. It may be noted that by retiring the plaintiff gave up his right to unemployment insurance benefits whereas if he had taken those benefits the defendant's contributions to unemployment insurance might have been increased. The fact that the retirement of the plaintiff was not specifically referred to in the contract as being the consideration on his part, did not prevent the plaintiff from showing by parol evidence that his retirement was the actual consideration. See, e. g., Fain v. Irvington Knitting Mills, 6 Misc. 2d 462, 166 N.Y.S.2d 544 (City Ct.N.Y. 1957); 4 Williston, Contracts, § 570 (3d ed. 1961).

Since the agreement was supported by consideration, the question next arises whether the action of the Board of Directors in approving the termination of the plaintiff's benefits under the contract, was a termination of those benefits in accordance with the contractual provisions. The defendant admits that the law imposed on the Board of Directors the duty of acting in good faith and that they could not act arbitrarily, capriciously or otherwise in bad faith in terminating the plaintiff's rights. The plaintiff attempts, however, to make use of a distinction that has been drawn between contractual acts to which an objective standard of "reasonableness" is to be applied and acts to which only a subjective determination of "good faith" is per-

missible. Fursmidt v. Hotel Abbey Corp., 10 A.D.2d 447, 200 N.Y.S.2d 256 (1st Dep't 1960). The defendant asserts that only the subjective standard may be applied here and if the Board of Directors honestly believed that the plaintiff's acts were detrimental to the corporation, their judgment must be taken as determinative. There are several reasons why this argument cannot be accepted.

In the first place, it is questionable whether the directors acted as they did out of concern for the corporation rather than in personal retaliation for plaintiff's attack on them as managers. In informing the plaintiff of the action of the Board of Directors in terminating his supplementary retirement benefits the defendant's president wrote:

"I am sure it is not necessary for me to go into details on the matter. Suffice to say, you served on a committee opposed to *management* of the Corporation and partook in a proxy contest for the avowed purpose of opposing the *management*." (Emphasis added).

The foregoing letter, as well as the Board resolution previously quoted, indicate that plaintiff's opposition to management, rather than the doing of any act necessarily detrimental to the corporation, was the reason for the cancellation of his contract. To the extent that the directors acted out of self-interest or personal malice, they obviously acted in bad faith in terminating plaintiff's benefits since their action was not based on any wrong done to the corporation.

Secondly, even assuming that the directors honestly believed that plaintiff's acts were detrimental to the corporation as well as to themselves, their termination of the contract was still not justified. Defendant's contention that only the subjective test of good faith is applicable here is not supported by the cases. This is not the type of judgment which calls for the exercise of personal taste or fancy, or even for an evaluation of another's services. See, Fursmidt v.

Hotel Abbey Corp., 10 A.D.2d 447, 200 N.Y.S.2d 256 (1st Dep't 1960). A determination of whether a given act is detrimental to a corporation is susceptible to objective tests and accordingly an objective standard should be applied to the contract. See, Ard Dr. Pepper Bottling Co. v. Dr. Pepper, 202 F.2d 372, 377 (5th Cir. 1953); Wynkoop Hallenbeck Crawford Co. v. Western Union Tel. Co., 268 N.Y. 108, 196 N.E. 760 (1935); Trustees of Hamilton College v. Roberts, 223 N.Y. 56, 119 N.E. 97 (1918).

Judged objectively it is clear that the Board was not justified in acting as it did. It is not necessary to try the merits of the differences between the rival proxy groups because the plaintiff's acts were simply not of such a nature as to warrant the Board concluding that he acted to the detriment of the corporation. The sole action of the plaintiff which the Board decided was detrimental was his participation in the 1958 proxy contest. The defendant's brief concedes that plaintiff acted as he did "for reasons which he undoubtedly believed to be good ones." In other words, there is no contention that the plaintiff acted in bad faith. Under this circumstance the Board could not have reasonably, and in accordance with the contract, found that the plaintiff's acts were detrimental to the corporation. The good faith participation of a stockholder in a proxy fight cannot be deemed to be detrimental to his company's interest. See Murchison v. Alleghany Corporation, 27 Misc.2d 290, 210 N.Y.S.2d 153 (Sup.Ct.Sp.Tr. 1960), aff'd 12 A.D.2d 753, 210 N.Y.S.2d 975 (1st Dep't 1961).

Furthermore, as a matter of contract interpretation, it appears that plaintiff's acts were not such that the Board could properly judge them to be detrimental. Although the termination clause refers to "any action" that may be adjudged detrimental, the following sentence sets out certain specific acts that "may be deemed detrimental" such as engaging in a competing business, participating in litigation relating to the cor-

poration and disclosing secret business information. It is true that this last sentence begins with the words "[w]ithout limitation," and therefore the rule of *ejusdem generis* on which the plaintiff relies is probably not strictly applicable. However, the specification of certain acts as detrimental does tend to indicate that not all acts engaged in by the plaintiff could properly be deemed detrimental, and further, it tends to show the types of acts that the parties to the contract had in mind as being detrimental to the corporation. It is clear that plaintiff's conduct falls into none of these specific categories, nor can it be encompassed by implication from any of them. It is reasonable to suppose that if one aim of the corporation was to prevent the plaintiff's participation in a proxy fight such as had just taken place, such a point would have been covered with particularity in the agreement, especially where certain types of detrimental conduct were specifically set forth.

■ Finally, as a matter of policy, the contract should not be construed to limit the rights of the plaintiff as a stockholder to exercise his independent judgment in electing the management of his company. Indeed, to construe the contract as having this effect might render at least that element of it illegal and unenforceable as a matter of law, and it is well established that a contract should be construed to avoid illegality if possible. Straight Side Basket Corp. v. Webster Basket Corp., 82 F.2d 245 (2d Cir. 1936).

### Conclusion

In summary, defendant's attempted termination of the contract was not justified in accordance with its terms, and the plaintiff is therefore entitled to recover the sum of $10,000, together with interest and costs.

The foregoing opinion shall constitute the findings of fact and conclusions of law of the Court in this action.

Let judgment be entered accordingly.