**JACOBUS et al. v. MASSACHUSETTS MUT. LIFE INS. CO. et al.**

**Civ. A. No. 3730.**

United States District Court
W. D. New York.

April 5, 1950.

Albrecht, Maguire & Mills, Buffalo, N. Y., for plaintiffs.

Dudley, Stowe & Sawyer, Buffalo, N. Y., for defendants Mass. Mut. Life Ins. Co. and another.

Kenefick, Cooke, Mitchell, Bass & Letchworth, Buffalo, N. Y., for defendants Carl W. and Otto A. Badenhausen.

KNIGHT, Chief Judge.

Plaintiffs, basing their suit on diversity of citizenship, allege in their amended complaint that defendant insurance company issued four policies on life of plaintiff William H. Jacobus, providing for a monthly retirement income, and payable to himself or his designated beneficiaries; that

said policies were issued to him as a participant in defendant P. Ballantine & Sons' pension trust established March 28, 1944, of which defendants Carl W. and Otto A. Badenhausen are trustees; that, on or about March 27, 1944, defendants collectively or individually caused certain written representations to be made to him about said pension plan in a booklet for all eligible employees of P. Ballantine & Sons and that he, such an employee, relied thereon in becoming a participant therein on or about March 28, 1944; that, as such participant, he was entitled to and "did elect optional life insurance death benefits at his own expense and agreed to and did pay the premium therefor"; that, on or before March 28 of each year said policies were in force—1944 to 1947—the two Badenhausen defendants as trustees and/or defendant P. Ballantine & Sons paid that portion of the annual premiums relating to retirement income benefits and he paid the portion relating to life insurance; that he performed services of value to P. Ballantine & Sons as consideration for its payment of said part of premiums; that said policies became fully paid until March 28, 1948; that said booklet stated employees might name and change beneficiaries; that he named his wife, the plaintiff Alicia A. Jacobus, and their children as beneficiaries; that they were such beneficiaries when in July, 1947, he left employ of P. Ballantine & Sons to accept employment with George F. Stein Brewing Company, Buffalo, N. Y.

It is further alleged that plaintiff William H. Jacobus has offered cash surrender value of said policies to said trustees but they refused to accept; that they state they have surrendered said policies for cash value to defendant Massachusetts Mutual Life Insurance Company but he does not know if this statement is true; that said policies provide they may be surrendered for cash value upon written election of insured and written assent of person to whom payable; that he as insured did not so elect nor did plaintiff Alicia A. Jacobus as beneficiary so assent.

It is further alleged that said booklet states that P. Ballantine & Sons may amend the pension trust agreement, provided that no such amendment shall divert any part of the trust for benefit of the company or for purposes other than exclusive benefit of respective participants and beneficiaries; that the surrender of the policies, if made, was for benefit of the company; that he has duly tendered full aggregate amount of annual premiums of said policies for year 1948 to defendant Massachusetts Mutual Life Insurance Company, which refused to accept; that said booklet states the pension trust is subject to approval of Commissioner of Internal Revenue; that he relied on latter's rules and regulations, which look with disfavor upon forfeitures of rights which have become vested under pension trust agreements; that he will suffer irreparable injury if Massachusetts Mutual Life Insurance Company does anything to impair plaintiffs' rights pending a final determination of this action.

Plaintiffs therefore demand (1) a temporary injunction enjoining Massachusetts Mutual Life Insurance Company from cancelling, destroying or impairing their rights in said policies; (2) judgment setting aside the surrender to it of said policies; (3) judgment ordering it to return and deliver to said trustees and/or P. Ballantine & Sons said policies upon repayments of their cash surrender value; (4) judgment ordering said trustees and/or P. Ballantine & Sons to assign and deliver to plaintiff (sic) said policies upon payment of their cash surrender value or, in the alternative; (5) judgment ordering Massachusetts Mutual Life Insurance Company to deliver said policies to plaintiff William H. Jacobus upon payment by him of their cash surrender value and annual premiums for year commencing March 28, 1948.

Defendant Massachusetts Mutual Life Insurance Company in its answer admits that it issued the four policies providing for monthly retirement income and death benefits and naming plaintiff William H. Jacobus as insured but denies that he paid a portion of the premiums relating to said benefits. As a separate defense it alleges that in 1944, 1945, 1946 and 1947 said plaintiff as the proposed insured and defendant Carl W. Badenhausen as trustee

under P. Ballantine & Sons Pension Trust made application to it "for a retirement income policy providing for monthly retirement income with life insurance benefits"; that it issued such policy and said trustees were owners thereof, it being intended that insured "should have no legal incidents of ownership in the policy"; that the owners, with its assent, had the right to change beneficiary and it was under no obligation to see that the terms of said trust were carried out and that any action taken and any payments made by it under direction of said owners would release it of all liability in connection with said policies; that said owners surrendered the four policies and were paid the cash values thereof.

Defendant P. Ballantine & Sons in their answer admit that they surrendered the policies to Massachusetts Mutual Life Insurance Company and that plaintiff William H. Jacobus offered them the cash surrender value thereof. As an affirmative defense they rely on their pension trust plan according to which all rights of said plaintiff and his beneficiary in said policies terminated when he entered the employ of their competitor George F. Stein Brewing Company.

Defendant Carl W. Badenhausen in his answer relies on the same defense.

By order of this court dated May 10, 1948, the action was dismissed as to the defendant Otto A. Badenhausen.

On May 10, 1948, a temporary injunction was granted against Massachusetts Mutual Life Insurance Company as prayed for in the complaint.

On June 27, 1949, this court, upon motion of plaintiffs, ordered that their cause of action against said insurance company founded on allegations that it "cancelled certain policies of life insurance without the consent of the insured or the beneficiaries thereof, be separated from the other issues in the alternative between plaintiffs and defendants Massachusetts Mutual Life Insurance Company, P. Ballantine & Sons and Carl W. Badenhausen, Trustee, and separately tried in advance thereof."

As so limited, this action was tried November 17, 1949. Plaintiffs testified for themselves. Only one witness was sworn by defendant.

■ This action is governed by the law of the forum.

■ "The law of the forum, that is, the law of the place where suit is brought, governs matters relating to the remedies on an insurance contract and to evidence and procedure, regardless of where the contract was made or is to be performed." 44 C.J.S., Insurance, § 51, p. 503. See United Services Life Ins. Co. v. Farr, D.C.S.D.N.Y., 60 F.Supp. 829, 832; Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477.

Plaintiff William H. Jacobus testified that he was employed by defendant P. Ballantine & Sons from 1938 until July 1, 1947, when he became employed by George F. Stein Brewing Company, a competitor in Buffalo, N. Y., from July 1, 1947, until September 26, 1949; that in 1944, while employed by Ballantine, he received a booklet, put in evidence, entitled: "P. Ballantine & Sons Pension Trust Plan. For Eligible Employees of P. Ballantine & Sons and its Subsidiaries." Under the preliminary statement "to eligible employees" dated March 27, 1944, and signed by Carl W. Badenhausen, President of P. Ballantine & Sons, it is said: "Under the provisions of the Social Security Act, which became effective January 1, 1937, our Company and its Employees are making joint contributions to a Plan that provides retirement benefits, commencing at age 65, for all our employees. Death benefits are also provided for the protection of an Employee's dependents, in event of an Employee's death either before or after retirement * * *. The Plan has been approved by the Directors of the Company subject to approval by the Commissioner of Internal Revenue * *. Participation in the Plan is not compulsory. However, inasmuch as the Company is bearing all of the premium cost, the plan is unusually attractive as a medium of providing income at retirement as well as protection for dependants in the event of death, either prior to or after retirement. I hope

every eligible Employee will take advantage of the opportunity that the Plan offers."

Then follows a 10 page "Outline of the P. Ballantine & Sons Pension Trust Plan." Under the heading "Termination of Employment" on page 8, it is said: "If, prior to death or retirement, a Participant shall cease to be an employee of the Company as a result of acts involving moral turpitude or if he should enter into the employ of a competitor or a business substantially similar to that of this Company, all the values of this contract shall inure to the benefit of the Trust."

Plaintiff William H. Jacobus testified that he never received any other information about the trust plan except what was contained in this booklet and that he relied upon the booklet when he applied for participation in the plan.

The four applications for participation signed by said plaintiff respectively on April 4, 1944, March 29, 1945, March 25, 1946, and March 17, 1947, are all addressed "To the trustees of the P. Ballantine & Sons Pension Trust Plan". In each he expressed his desire for "a contract with life insurance benefits" and named the beneficiaries of the death benefits. Each application contains the provision: "I agree to be bound by and subject to all of the terms, provisions and conditions contained in the said agreement of trust."

This agreement is annexed to the answer of defendant P. Ballantine & Sons.

In each of the four policies, photostatic copies of which were received in evidence, William H. Jacobus is the named insured. Policy No. 1525815, issued March 28, 1944, contains "Endorsements (For Home Office Use Only)" which provide:

"Pursuant to and in accordance with the application, as amended, copies of which are attached, the following provisions are hereby incorporated and made a part of Policy No. 1525815 on the Life of William H. Jacobus

"Owner: Carl W. Badenhausen and Otto A. Badenhausen, as trustees, or their successors in trust, in accordance with the P. Ballantine & Sons Pension Trust dated March 28, 1944, and any amendments or supplements thereto

"All rights, privileges, benefits, options and elections granted to or conferred upon the insured by the policy are vested solely in said owner, it being intended that the insured shall have no legal incidents of ownership in the policy."

It is further provided: "The Company shall be under no obligation to see to the carrying out of the terms of said trust, or to the proper exercise of any rights or powers by said owner, and any action taken and any payments made by said Company in accordance with the direction of said owner shall release said Company of any and all liability in connection therewith."

The annexed "amendment of application" dated March 28, 1944, contains said provisions and is signed by Carl W. Badenhausen, Trustee, and by William H. Jacobus, Proposed Insured.

Policy No. 1558202, issued March 28, 1945, contains "Endorsements (For Home Office Use Only), which provide:

"Pursuant to and in accordance with the application, as amended, copies of which are attached, the following provisions are hereby incorporated and made a part of Policy No. 1558202 on the life of William H. Jacobus." The provisions that follow are the same as in the first policy but the words "as amended" are deleted.

In the application for this policy, dated April 10, 1945, and signed by William H. Jacobus, as proposed insured, and by Carl W. Badenhausen, Trustee, under item 14 the owner is designated as "Carl W. Badenhausen and Otto A. Badenhausen, as Trustees, or their successors in trust, in accordance with the P. Ballantine & Sons Pension Trust dated 3/28/44 and any amendments or supplements thereto."

Policies No. 1595068, issued March 28, 1946, and No. 1642215, issued March 28, 1947, contain "Endorsements (For Home Office Use Only)" which provide: "Pursuant to and in accordance with the application the following provisions are hereby incorporated and made a part of Policy No. 1595068 (respectively No. 1642215) on the Life of William H. Jacobus." Then follow

the same provisions as in the first three policies. The annexed respective applications, signed by William H. Jacobus, as proposed insured, and by Carl W. Badenhausen, Trustee, designate the same owner as in the application for the policy issued March 28, 1945.

The policies were delivered to the trustees and the insured received photostatic copies, which were put in evidence.

Each of the four policies names William H. Jacobus as insured and the beneficiary and states the monthly retirement income, maturity date and sum insured. It then recites:

*"In Consideration* of the application for this policy, a copy of which is hereto attached, and of the payment of premiums as hereinafter specified, the Massachusetts Mutual Life Insurance Company will pay * * * to the insured, the Monthly Retirement Income above specified, increased on account of any paid-up endowment additions or dividend accumulations, or decreased on account on any indebtedness * * *. The first of such income payments will be made on the Maturity Date above specified if the insured be then alive and this policy is then in force, and subsequent payments will be made on the same day of each month thereafter during the lifetime of the insured.

"Upon receipt at said Home Office of due proof of the death of the insured, occurring prior to the said maturity date and while this policy is in full force, the Company will pay at said Home Office, to the beneficiary herein, the Sum Insured or the cash value of this policy at the end of the then current policy year, whichever is the larger, less any balance of premium for the then current policy year and less any other indebtedness to the Company hereunder."

Each policy provides for the payment of a single premium either annually, semiannually or quarterly. All premiums were paid by the employer. Plaintiffs, however, insist that part of each premium was paid from the employee's compensation for his services.

Said booklet under the caption "Optional Life Insurance Protection and Income Tax Liability" provides: "Under the present Law and Regulations pertaining to Pension Plans, it is necessary for each Participant to report each year as additional income a certain portion of the premium of his policy *if life insurance proceeds are provided.* There is considerable agitation to eliminate this provision of the Regulations, however, as matters presently stand, each Participant on whom life insurance is issued will be subject to some income tax liability in connection therewith."

Reference is apparently made to 26 U.S. C.A. § 165, entitled "Employees' trusts." This section, however, does not distinguish retirement and death benefits. On page 6 of said booklet is a table showing "Amount of additional annual income to be reported for each $1,000 face amount of life insurance issued." The trust agreement itself, annexed to the answer of P. Ballantine & Sons, does not contain this table. At the trial the testimony of Sydney Gutkin, attorney for P. Ballantine & Sons, taken on deposition, was read in evidence to the effect that the trust plan had been submitted to and approved by the Commissioner of Internal Revenue. It appears that the income schedule on page 6 of the booklet was computed from the instructions contained in section 29.165-6, entitled "Taxability of Beneficiary Under a Trust Which Meets the Requirements of Section 165(a)", of Regulations 111, under Internal Revenue Code, of U. S. Treasury Department—Bureau of Internal Revenue.

Plaintiff put in evidence three photostats of Treasury Department Form 1099 stating that P. Ballantine & Sons paid to William H. Jacobus for "Salaries or Other Compensation" in 1945—$89.59; in 1946—$120.05; in 1947—$63.35. Under each figure are the words "Life Insurance Premium Paid."

At the trial, Norman C. Ford, an actuary employed by defendant Massachusetts Mutual Life Insurance Company, testified that the four policies in question were issued to the trustees of P. Ballantine & Sons Pension Plan to make good their promises to William H. Jacobus under the plan. He said:

"Q. * * * Now looking at that policy in all these exhibits, what does it show as a premium? Is it one premium or two premiums? A. It is just one premium for the entire policy.

"The Court: For retirement and for insurance. Can you split up some amount for retirement?

"The Witness: I don't see how it can.

"Q. Is there anything in the contract that provides for a premium for a so-called death benefit and for retirement benefits? A. Not separately, no."

At the trial, the testimony of Eugene H. Jeffrey, assistant treasurer of P. Ballantine & Sons, taken on deposition, was read in evidence to the effect they paid to the insurer on these four policies in 1944—$199; in 1945—$513.02; in 1946—$694.97; in 1947—$769.24.

In 44 C.J.S., Insurance, § 336, pp. 1286–1287, it is said: "Life policies containing provisions for double indemnity and disability benefits for which separate premiums are paid are regarded as containing distinct contracts respecting different objects even though contained in one instrument; but the rule is otherwise where the consideration for all such liabilities was one and the same premium, and it has been held that a policy with such benefits did not constitute several contracts because a separate premium was charged for disability benefits where the promises, although to some extent separable, were integral parts of a single policy."

In the four policies in question there was but a single unapportioned premium paid through the trustees who procured the policies and became the owners thereof.

On March 15, 1944, an agreement to be effective March 28, 1944, was made among P. Ballantine & Sons, the "Parent Company", Ballantine Brewing Company, the "Subsidiary Company," and Carl W. and Otto A. Badenhausen, "Trustees", which recites that "the Parent and Subsidiary Companies desire to provide retirement benefits for their salaried employees with respect to that part of their compensation which is not taken into consideration under existing Social Security legislation, and to that end, to adopt and carry out a plan, to be known as the P. Ballantine & Sons Pension Trust, for the benefit of those of their employees who shall become participants therein."

*Article II:* 5 thereof provides: "Each employee so eligible may elect to become a participant, by making written application on the form or forms provided by the trustees for that purpose. The signing of such application shall constitute a consent to all provisions of this agreement and make the employee a party thereto. The participation of any employee shall be voluntary."

*Article III,* entitled "Type and Amount of Contract" then provides:

"6. Forthwith, thereafter, the trustees shall apply to a life insurance company, or companies, selected by them, for a contract or contracts covering each such applicant and providing for the benefits provided in paragraph 7 * * *.

"10. Each such contract, or the application therefor, shall contain a statement providing, in substance, that title thereto and all rights therein, shall be vested solely in the trustees and their successors; except that the method of payment of the proceeds at pension date or death of the participant may be changed in accordance with paragraph 11 hereof."

*Article V,* entitled "Termination of Services and Maturities", provides: "18. If a participant, prior to his pension date, shall cease, for any reason other than his death, to be employed by the company, he shall cease to be a participant, and his right or privilege to further participation in this trust, shall cease and determine, except as hereinafter provided, and the company shall make no further payment to the trustees on his behalf. If the participant has been discharged because of acts involving moral turpitude, no benefit or payment shall accrue to him at any time. If, however, the participant shall cease to be employed for any other reason, the provisions of Paragraph 15(b) shall be applied; except that if such participant shall, prior to his pension date, enter into the employ of a competitor

or into a business substantially similar to that of the company, all rights of such participant and his beneficiary hereunder or in any such contract shall be cancelled and terminated."

This trust agreement was submitted to and approved by the Commissioner of Internal Revenue as complying with 26 U.S.C.A. § 165.

Plaintiff William H. Jacobus testified on cross-examination:

"Q. Mr. Jacobus, when you left Ballantine & Sons in July of 1946, you resigned from your position, did you not? A. That is correct.

"Q. And you resigned for the purpose of taking a position with George F. Stein Brewing Company of Buffalo; isn't that correct? A. That is right.

"Q. And George F. Stein Brewing Company in Buffalo manufactures and sells beer and ale in Buffalo and Western New York and elsewhere, isn't that right? A. That is right.

"Q. And did at the time you went to work for them? A. Yes, sir.

"Q. And Ballantine and Sons manufactures beer and ale in Newark and sells it throughout the State of New York and elsewhere? A. That is right.

"Q. The territory through which and over which both companies sold their products at the time that you left Ballantine and went with Stein was the same in so far as the Western District of New York is concerned, at least? A. The territories were the same?

"Q. Yes, they both operated in Western New York. A. Yes.

"Q. And were competitors? A. No, I won't agree with that.

"Q. They sold the same product? A. That is correct."

The fact that the employer, pursuant to regulations of the Bureau of Internal Revenue, credited to insured a portion of the total premium paid on the policies for death benefits does not alter the trust agreement to which insured expressly assented or affect the stipulated ownership of the four policies. When the insured William H. Jacobus, on July 1, 1947, being under the age of 65 and before the maturity date of the policies, voluntarily left the employ of P. Ballantine & Sons to accept a position with their local competitor, he forfeited all rights under the policies and trust agreement either against his former employer or the defendant insurer.

Judgment, in this action, must therefore be and is granted in favor of defendant Massachusetts Mutual Life Insurance Company and against the plaintiffs.