Michael Catalano, J.
Petitioner moves for an order directing respondents to pay him the principal and interest due him under the profit-sharing and retirement plan for employees of Simon Oil Company, Inc.
The petition alleges that from July 1, 1955 to May 1, 1961, petitioner was employed by the Simon Oil Company, Inc. (herein called “ Simon ”), as a service repairman; that on December 27, 1955 Simon adopted a profit-sharing and retirement plan for its employees effective December 31, 1955 set forth in a written trust agreement between Simon and the above-named trustees, *817 creating an irrevocable trust for Simon employees, the corpus of which was to consist of certain earned net annual profits; that the trustees and Simon Dimet constituted the advisory committee to the trustees; that petitioner’s share in the trust fund amounted to $4,552.74; that according to the trust agreement, in the event of retirement, lay-off, death or total disability, each employee was vested with a nonforfeitable interest in the credit allocated to his account in the trust fund, and petitioner’s credit was $4,552.74, less $910.55 received by him; that on May 1, 1961, petitioner was laid off solely because of depressed economic conditions and he was to be paid his share over 10 years; that the trust agreement provides for denial of benefits to an employee who continues to participate in a competitive business or activity after 30 days ’ notice to cease; that petitioner became an employee of Canlake Petroleum Corporation and continued as such after 30 days’ notice to cease such employment; that the trust fund was created only by Simon although petitioner worked extra hard for Simon because the trust fund was created and he purchased Gulf gasoline, as requested by Simon, to increase Simon’s profits; that respondents represented that the plan was equivalent to an increase in salary; that petitioner was never informed of this revocation provision which is an unreasonable restriction on employment and is arbitrary; that by such revocation of benefits, the trustees, being shareholders, officers, directors and employees of Simon, can profit thereby.
Attached to the petition is a pamphlet explaining to the Simon employees how the plan works, concluding: ‘ ‘ However, nothing in this explanation shall change, in any way, the provisions contained in the plak and Trust Agreement which contains the full details of operation of the plan. The Trust Agreement as administered by the Advisory Committee and the Trustees is the final authority in case of any dispute.” In April, 1961, a fellow employee of petitioner could not obtain a copy of this plan, but was advised it could be obtained only from Simon’s attorneys.
The answer of the named respondents (disclaiming they are trustees) basically denies liability and upholds the plan and the action taken thereunder. It also states that the plan is a “ qualified profit-sharing plan within the meaning of see. 401 (a) of the Internal Revenue Code of 1954, and was and is exempt from federal income taxation under the provisions of sec. 501 (a) thereof, the said plan having been duly submitted for qualification and duly approved by the Internal Revenue Service on the 25th day of July, 1956; ’ ’ that the plan was established by Simon voluntarily, financed entirely by Simon, not part of any employment contract, subject to amendment or termination by Simon *818 at any time, and conferred only conditional rights upon employees; that the advisory committee and trustees at all times acted in good faith.
“ The Profit-Sharing and Retirement Plan for Employees of Simon Oil Company, Inc.,” consists of 50 pages. The plan is embodied in an agreement, dated December 27, 1955, between Simon and Simon Dimet, Morton Dimet and Theodore Dimet, trustees. The cost of the plan is borne entirely by Simon out of profits. “ The plan is created for the exclusive benefit of eligible employees of the Company to compensate and reward them for loyal and faithful service. ’ ’ (1.07. Purpose.) After an employee executes certain forms to become a participant in the plan, he “ shall be conclusively deemed to have consented to this agreement, to the Plan, to the Trust Agreement and to all the terms and conditions hereof.” (3.01. (1). See, also: 3.03. “Participants bound by this agreement,” to the same effect.) Simon does not guarantee the trust fund against loss or depreciation. (4.03.) Simon’s failure to contribute for any year in which there is a “net profit” terminates the plan. (4.04.) Each participant had a “ vested and non-forfeitable interest ” in the trust fund “ to the extent and on the terms and conditions hereinafter provided.” (8.01.) “ Any vested interest in the Trust Fund shall be and become payable to the respective participant or his beneficiary or beneficiaries only in the manner provided in Article X.” (Emphasis supplied. 9.05. “Payment.”) If a participant’s interest under the plan is forfeited, the amount thereof reduces the contribution to the plan and trust fund for the year in which such forfeiture is effective and is allocated to the credit of the remaining participants in the same manner as other contributions. (9.06. “Disposition of Forfeited Interest.”)
Article X, entitled “Distribution of Benefits ” of the plan, 10.04 “ Denial of Benefits,” provides: “ If the Committee finds that any participant being paid benefits under this Plan is engaged, directly or indirectly, as agent, employee, owner, partner, stockholder or otherwise in any business or activity which competes with or is detrimental to the Company, and if after thirty days’ notice given by mail to the last address of such former participant, such former participant continues to be engaged in such business or occupation, the Committee shall instruct the Trustees to suspend such payments and shall make appropriate adjustments on its books and records to reflect the forfeiture of such interest.” In no event do any trust assets revert to the company. (15.10.)
*819 Respondents also move for an order dismissing the petition, without prejudice to the commencement of a proper action because this proceeding cannot be brought under article 79 of the Civil Practice Act, and, in the alternative for summary judgment in favor of respondents under rule 113 of the Rules of Civil Practice.
A respondent, Theodore Dimet, states in his affidavit that petitioner dealt directly with Simon’s customers as a mechanic-serviceman for about 12 years; that following his lay-off by Simon, petitioner began working in the same capacity for Can-lake Petroleum Corporation, a major competitor of Simon; that besides the plan, Simon has added life and extended group hospitalization programs for employees, increased vacation rights and granted numerous wage increases; that the plan covered 36 employees and was not intended to benefit the Dimet family or the executives of Simon.
Generally, each case involving a negative promise by an employee to his employer not to work for another depends upon its own particular facts. (Clark Paper & Mfg. Co. v. Stenacher, 236 N. Y. 312, 321.) An employer may not prohibit a former employee from using the experience gained while working at his trade, unless it breaches a confidence; to do so would be contrary to public policy. (Paramount Pad Co. v. Baumrind, 4 N Y 2d 393, 397; see, also, General Business Law, § 340; Kaumagraph Co. v. Stampagraph Co., 197 App. Div. 66, 76, affd. 235 N. Y. 1.)
This does not mean that an employer may not give an employee a gift of money, or postpone the actual payment of a gift, upon certain conditions. So, where an employer sets up a pension fund for qualified employees, voluntarily contributing all the money to the fund, he may provide the condition that no employee has a vested right to any sum of money until the employee actually receives payment. (McNevin v. Solvay Process Co., 32 App. Div. 610, 612-613, affd. 167 N. Y. 530.) The condition imposed upon the payment of the money may be lack of efficiency, industry and loyalty of the employee as determined by a specified committee. (Burgess v. First Nat. Bank, 219 App. Div. 361, 367.) The mere crediting of such a gift upon the employer’s or employee’s books before actual payment does not give the employee a vested right to the sum noted. (Dolge v. Dolge, 70 App. Div. 517, 521.) The name given by the employer to the scheme or plan of distribution of the gift, such as ‘1 Provisional Retirement Plan,” does not, per se, change the express, clear terms of the method of paying the conditional gift. (Korb v. Brooklyn Edison Co., 258 App. Div. 799.) Where the condition of payment to the employee is not to compete with his employer *820 after leaving his employment, this is no bar to competition even though it is a forefeiture to the undelivered gift of money. (Kristt v. Whelan, 4 A D 2d 195, 197, 199, affd. 5 N Y 2d 807.)
On November 8, 1938, the People of this State approved section 7 of Article V of the Constitution of the State of New York, providing that: “ After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired. ”
After that effective date, such systems were no longer gratuitous, but became contractual, vesting in each pensioner the undiminished and unimpaired benefits thereof. (Matter of Day v. Mruk, 307 N. Y. 349, 354; see, also, Birnbaum v. Teachers Retirement System, 5 N Y 2d 1, 8.) A statute does not conflict with the Constitution or impair a contract, if it provides for a “ conditioned grant ” to municipal firemen covered by a Fireman’s Pension Fund. (Dunn v. City of New York, 7 N Y 2d 232, 239.)
The foregoing constitutional provision was enacted to overcome the dictum in Roddy v. Valentine (268 N. Y. 228) to the effect that prior to retirement, such public systems, created wholly or largely of public funds, were subject to the will of the Legislature. (Birnbaum v. Teachers Retirement System, 5 N Y 2d 1, 8, supra.) The Roddy dictum also gave rise to the constitutional question whether the pensioner’s property would have been taken without due process of law, if the refunding of his own contributions were regarded as being subject exclusively to the discretion of the public authorities. (Matter of Day v. Mruk, 307 N. Y. 349, 358, supra.)
Here, the plan was private, not public; it was created solely from the employer’s funds, not the employee’s; it was created to reward loyal and faithful employees, not those who compete.
It was believed necessary to amend the State Constitution to avoid the diminution or impairment of benefits of public employees participating in a public pension or retirement system and to create a constitutional fiction that such participation as a member constitutes a contractual relationship.
Here, the employee was not protected by statutory or constitutional provision; he was not a party to a contract, legal or factual.
A solemn document is to be faithfully construed according to its terms as written by the parties (Engel v. Guaranty Trust Co., 280 N. Y. 43, 48) and even the court may not make a new contract for the parties under the cloak of interpreting a clear and definite writing. (Friedman v. Handelman, 300 N. Y. 188, 194.)
*821 Here, the plan created "by the employer was a mere promise to make a gift to noncompeting, former employees. The petitioner chose to compete, which he had a clear legal right to do, but such competition justified the trustees in denying him the undelivered gift of money according to the clear and definite terms of the writing that defined the plan.
The plan in this case is not an “ express trust ” as defined in article 79 of the Civil Practice Act. (Civ Prac. Act, § 1307; see, also, Gregory v. Wilkes, 26 Misc 2d 641; Matter of Bank of N. Y., 21 Misc 2d 566; Matter of Roberts v. Galbreath [for an order pursuant to Civ. Prac. Act, art. 79], 18 Misc 2d 599; Matter of Norwood, 92 N. Y. S. 2d 185.)
Petition is dismissed, without costs. Prepare and submit final order accordingly. Respondents’ cross motions are academic.