## Richmond

NATIONWIDE MUTUAL INSURANCE COMPANY, INC., ET AL. v.
SIDNEY R. TATEM.

April 27, 1970.

Record No. 7144.

Present, All the Justices.

*Joseph A. Leafe* (*Rixey and Rixey*, on brief), for plaintiffs in error.

*Vann H. Lefcoe* (*Lefcoe and Lefcoe*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Sidney R. Tatem, the plaintiff, filed a motion for judgment against Nationwide Mutual Insurance Company, Inc., Nationwide Mutual Fire Insurance Company, Inc., and Nationwide General Insurance Company, Inc., the defendants. In the motion, the plaintiff sought recovery of damages for breach of a "Master Agent's Agreement" entered into by the plaintiff and the defendants.

The case was tried before a jury. The trial court overruled the defendants' motions to strike the plaintiff's evidence and, over the defendants' objection, submitted the case to the jury. A verdict was returned in favor of the plaintiff in the sum of $2502.46. The trial court entered final judgment for the plaintiff, and the defendants were granted a writ of error.

The evidence showed that for nine years prior to April 1, 1965, the plaintiff had represented the defendants as an insurance agent in Norfolk. The "Master Agent's Agreement" under which the parties operated provided that if the agreement was terminated by the defendants for other than certain specified reasons, the plaintiff would be entitled to receive "extended earnings." Such compensation, representing "a percentage of . . . renewal service fee earnings," was to be payable on a monthly basis for twelve months. The agreement further provided that "all rights to such extended earnings" would immediately become void if the plaintiff should "induce, or attempt to induce, any existing policyholders to replace, lapse, forfeit or cancel any policies issued by the Companies."

On April 1, 1965, the defendants terminated the employment of the plaintiff for reasons other than those specified in the agreement. They began paying him the amount of "extended earnings" to which he was entitled under the agreement.

Following termination of his employment with the defendants, the plaintiff went into business as general agent for a number of insurance companies. He sent a letter to each of the defendants' "five or six hundred" policyholders whose insurance he had previously handled. The letter read:

"For nearly nine years, I have represented Nationwide Insurance Companies. But, effective April 2, 1965, I severed my relations with those companies. These years have been good to me . . . mostly because of you and my many other friends.

"As you probably already know, on several occasions, Nationwide has asked me to join their ranks of District Managers. I have always refused because I was not quite sure that this was what I wanted for me, my wife and four children.

"At last I have found the position I feel is best for my clients, my friends and my family. That position is as General Agent or Broker for several different insurance companies.

"I have always tried to protect the interest of each of my clients, but at times it has been difficult since I was not permitted to be licensed with other insurance companies. An Agent can never be truly independent when his only company requires exclusive representation.

"By having several different companies, I can be of better service to my clients by fitting the companies, policies and procedures

to each individual client. This should eliminate unnecessary cancellation, rejection, and constant increase in premium.

"My new organization will include a specialist in Life, Accident and Sickness, Commercial Accounts, Group Insurance, and Bonds. Of course, we will still have a complete line of Auto, Fire, Homeowners, etc.

"I hope to be seeing you soon, but in the meantime, if I can be of any service to you on new insurance, or help you with your present insurance, please do not hesitate to call me anytime . . . day or night. My office location and my telephone numbers will remain the same."

The defendants then stopped making the payments of "extended earnings" called for in the "Master Agent's Agreement." This led to filing of the present action by the plaintiff to recover the balance of the payments he claimed to be due. The defendants countered with an assertion that the sending of the letter by the plaintiff constituted a breach of the "Master Agent's Agreement" voiding his right to further compensation.

The plaintiff contends that it was a jury question whether his sending of the letter to the defendants' policyholders was an "attempt to induce" such policyholders to "replace, lapse, forfeit or cancel" their policies with the defendants. The defendants contend, on the other hand, that there were no conflicts in the evidence and no factual matters for the jury to decide. Therefore, the defendants say, the trial court should have ruled as a matter of law that the sending of the letter constituted a breach by the plaintiff of the "Master Agent's Agreement."

We agree with the defendants. We believe the only reasonable conclusion which can be reached is that the sending of the letter was an obvious attempt by the plaintiff to induce the defendants' policyholders to "replace, lapse, forfeit or cancel" their existing policies.

In the letter, the plaintiff intimated that the policyholders were *his* "clients," thus suggesting that he had some prior claim to their business. The letter implied that the interests of the policyholders could not be protected properly in the type of agency relationship required by the defendants, with the clear indication that such interests would be better protected in the new role occupied by the plaintiff.

The letter conveyed the plain meaning that the defendants had subjected the policyholders to unnecessary cancellation and rejec-

tion of policies and had constantly increased premiums without reason. And there was the transparent holding out that those things would not occur in the new setup of the plaintiff because he would render "better service" to his "clients."

The letter contained an open invitation to the policyholders to call the plaintiff "anytime . . . day or night" about "new insurance" or "present insurance." That and the other language of the letter was an unveiled solicitation to have the policyholders "replace" existing policies issued by the defendants with insurance to be written by the plaintiff.

We hold that the sending of the letter in question to the defendants' policyholders was, as a matter of law, a breach of the "Master Agent's Agreement" voiding the plaintiff's right to further "extended earnings." Accordingly, the judgment of the trial court will be reversed, the verdict of the jury set aside, and final judgment entered here for the defendants.

*Reversed and final judgment.*