The **ROCHESTER CORPORATION,**
Appellant,

v.

**W. L. ROCHESTER, Jr., Appellee.**

**No. 15408.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 27, 1971.

Decided Nov. 5, 1971.

Haynie S. Trotter, and R. Terrence Ney, Fairfax, Va. (Bauknight, Prichard, McCandlish & Williams, Fairfax, Va., on brief), for appellant.

James M. Thomson, Alexandria, Va., and D. French Slaughter, Jr., Culpeper, Va. (Button, Slaughter & Yeaman, Culpeper, Va., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The plaintiff (appellee) seeks a declaratory judgment, establishing the invalidity of an asserted forfeiture of his right as a former employee to retirement benefits under a voluntary, non-contributory pension plan established by his employer (defendant-appellant).

The plaintiff became an employee of the defendant in 1941 and continued as such until 1965, when he voluntarily quit. In 1943, the defendant voluntarily established a non-contributory pension plan for the benefit of its employees. Such plan provided that any "member", defined to be any "active employee of the Company", shall, if his employment be terminated after ten or more years' service, be entitled, upon attaining the retirement age of sixty-five, to receive retirement benefits calculated upon the basis of his years of service prior to termination of employment and rate of pay during such service. While the Directors of the defendant were empowered to amend the plan, that right was strictly circumscribed by the provision that no amendment adopted might "impair the interest in the Trust of any member created by or resulting from prior contributions". On July 21, 1960, acting under this power of amendment, the Board of Directors of the defendant, with the approving vote of the plaintiff in his capacity as a Director, adopted an amendment, effective January 1, 1961, which authorized the Board to declare forfeited "all rights and benefits under the Pension Plan" of any executive, administrative, engineering or sales employee who "after retirement or termination of his service" engaged in employment competitive with the defendant. Defendant asserted, and plaintiff did not seriously dispute, that plaintiff had formerly been employed in an executive position and after leaving defendant's employ had engaged in employment violative of the provisions of the 1960 amendment. As a consequence, the Pension Committee notified plaintiff that his rights to any benefits under the pension plan were forfeited. Contending that such forfeiture was illegal, the plaintiff, who has not attained the retirement age of sixty-five, brought this action to obtain a declaration of his continuing rights under the pension retirement plan.

Following trial of the issues, the District Court granted the plaintiff the relief sought, 316 F.Supp. 139. It found that, by the express terms of the pension plan itself, the power of the defendant to impair by amendment the rights of the plaintiff under the plan could only be exercised "prospectively" and that accordingly the power to declare a forfeiture under the 1960 amendment could not apply to benefits accruing to plaintiff under the plan prior to the effective date of the amendment. It proceeded, also, to hold that the 1960 amendment, insofar

as it provided for forfeiture of benefits subsequent to the effective date of the amendment by reason of engaging in competitive employment, was invalid. It concluded, therefore, that the action of the Pension Committee in declaring the rights of the plaintiff under the plan forfeited was improper. From judgment to this effect, the defendant has appealed.

We affirm as to benefits accruing prior to the effective date of the 1960 amendment and reverse as to benefits accruing subsequently.

■ The basic contention of the defendant, in its challenge of the District Court's conclusions, is that, even though an employee such as plaintiff may have been in its employ for the ten years required for qualification or eligibility under the retirement plan, that employee has no "vested" rights "until the time that an (the) employee's employment is terminated" and accordingly that, until the qualified employee has acquired a "vested" right either by terminating his employment or by retiring, the plan may be altered or amended and the rights of the employee, acquired by service for the period of qualification, thereby legally impaired. This argument would make a basic distinction in rights between an employee, with the qualifying period of employment who has either quit or been discharged, on the one hand, and one who is still employed, on the other. In essence, the defendant urges that, if the plaintiff had quit the defendant's employment prior to the adoption of the amendment of July 21, 1960, the amendment could not have impaired his rights acquired as a result of contributions made prior to that date but that—and this is the heart of its argument—since

he was in defendant's employ at the time it was adopted, the amendment could and did legally impair any claim he may have previously acquired, as well as those subsequently accruing, by reason of contributions made on his behalf to the pension fund. The District Court, in our opinion, properly rejected such contention, so far as it applied to benefits accruing to the plaintiff by reason of his employment prior to the effective date of the amendment.

We perceive no sound or logical basis for differentiating, as the defendant does, between an employee-member who has served more than ten years but is still employed and one, who has likewise served more than ten years but is not then employed, or for designating the rights of one as "vested" and the other as "inchoate". The result of adopting the defendant's argument would be that an employee serving more than ten years, who had been discharged for cause, would be protected from dilution of his right through an amendment of the plan, but one who had not been so discharged but was still employed, would not be protected. Such a distinction is obviously both unfair and unreasonable. The language of the plan, which, of course, controls, neither suggests nor supports such an inequitable result.

■■ The pension plan provided that all employees of the defendant, if they remained in the employ of the defendant ten or more years, would be entitled, on attaining retirement age, to certain specified pension rights. While unilateral, that offer, when accepted by an employee as evidenced by rendering services for ten or more years, became "irrevocable"[1] and such employee acquired

1. See, 1A, Corbin on Contracts, sec. 153, pp. 18–20 (1963) :
"A promise by an employer to pay a bonus or a pension to an employee in case the latter continues to serve for a stated period is not enforceable when made; but the employee can accept the offer by continuing to serve as requested, even though he makes no promise. There is no mutuality of obligation; but there is sufficient consideration in the form of service rendered. Indeed, the

employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting; and this is true in spite of the fact that the employee may be privileged to quit the service at any time."
Note, Pension Plans and the Rights of the Retired Worker, 70 Col.L.Rev. 909, 917 :
"The employee (under a pension plan) accepts by fulfilling the requirement that

"a right no less contractual than if the plan were expressly bargained for".[2] By rendering service for the period required under the plan, the employee's rights to benefits under the plan are "earned no less than the salary paid to him (the employee) each pay period"[3] and are "in the nature of delayed compensation for former years of faithful service".[4] Whether the plan be contributory or non-contributory, the benefits, thus earned, are not gratuities.[5]

These conclusions, amply sustained as they are by precedents from other jurisdictions, accord with Virginia law, which, the parties apparently concede, is controlling here. Twohy v. Harris (1952) 194 Va. 69, 72 S.E.2d 329, 335–336.

The plaintiff had accordingly acquired on July 21, 1960, when this amendment was adopted, an "irrevocable" right, a right that, under appropriate circumstances, was entitled to judicial protec-

he continue in his position for a specified number of years. At this point benefits either vest and begin to accrue as the employee continues in service or . vest immediately if the employee retires."

2. Russell v. Princeton Laboratories, Inc. (1967) 50 N.J. 30, 231 A.2d 800, 803.

See, also, Annotation, 81 A.L.R.2d 1066, at p. 1070; George A. Fuller Co. v. Brown (4th Cir. 1926) 15 F.2d 672, 676; Hurd v. Illinois Bell Telephone Company (7th Cir. 1956) 234 F.2d 942, 946, cert. den. Seybold v. Western Electric Co., 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed. 2d 124, reh. den. 352 U.S. 977, 77 S.Ct. 352, 1 L.Ed.2d 329; Siegel v. First Pennsylvania Banking & Trust Co. (D.C.Pa. 1961) 201 F.Supp. 664, 668; Loengard v. Metal & Thermit Corporation (D.C. N.Y.1962) 204 F.Supp. 74, 77; Vocke v. Third National Bank and Trust Company (Ohio Mun.Ct.1971) 20 Ohio Misc. 29, 267 N.E.2d 606, 612; Garner v. Girard Trust Bank (1971) 442 Pa. 166, 275 A.2d 359, 361.

The rights under a pension plan, being contractual, vary with the terms of the particular plan under consideration. For instance, some plans, unlike that involved in this action, require that the employee be actually employed at the time the employee reaches retirement age. See, Lee v. Jenkins Brothers (2d Cir. 1959) 268 F.2d 357, 361, cert. den. 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183; Taint v. Kroger Company (1967) 20 Ohio Misc. 29, 247 N.E.2d 794, 796–797. Every plan must accordingly be construed in accordance with its own unique language.

3. Dierks v. Thompson (D.C.R.I.1969) 295 F.Supp. 1271, 1275, rev. on other grounds, 1 Cir., 414 F.2d 453.

4. Wands v. Cauble (1967) 270 N.C. 311, 154 S.E.2d 425, 427.

Whether contributory or non-contributory, pension plans are inaugurated by the employer, not as gratuities, but as instruments for providing its employees with deferred compensation, in a form that will influence its employees to continue in its service, thereby minimizing labor turnover and securing "a more stable and a more contented labor force." Cantor v. Berkshire Life Ins. Co. (1960) 171 Ohio St. 405, 171 N.E.2d 518, 521. Such plans serve the interest of both employer and employee. The benefits to the employees, though deferred, are as much an item in the employee's compensation as his cash salary. Because they are in the nature of "wages", they are regarded as proper subjects of collective bargaining under Section 9(a) of the National Labor Relations Act (Inland Steel Co. v. National Labor Relations Board (7th Cir. 1948) 170 F.2d 247, 255, aff. American Communications Ass'n CIO v. Doudo, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925) and the employer's payments into the pension fund are deemed tax deductible. Russell v. Princeton Laboratories, Inc., *supra*, 231 A.2d 800. For these reasons, the pension plan, drafted as it normally is by the employer, is to be construed liberally in favor of the employee. See Dierks v. Thompson, *supra*, 295 F.Supp. at p. 1278.

5. Puma v. Brandenburg (D.C.N.Y.1971) 324 F.Supp. 536, 544; Cantor v. Berkshire Life Ins. Co., *supra*, 171 N.E.2d 518, 522. In the latter case, the Court said:

"Therefore, whether a retirement plan is contributory or noncontributory and even though the employer has reserved the right to amend or terminate the plan, once an employee, who has accepted employment under such plan, has complied with all the conditions entitling him to participate in such plan, his rights become vested and the employer cannot divest the employee of his rights thereunder."

tion. He was not required to terminate his employment in order to give vitality and enforceability to that right.[6] Under the terms of the plan, he had met the conditions of the plan by continuing employment for more than twenty years and was entitled to the benefits thereunder, exercisable when he attained sixty-five years of age.[7] By the express terms of the plan, that accrued "right" that he as a "member" of the plan had acquired could not be impaired by any amendments subsequently made in the plan. Such amendment could only operate, as the District Court correctly phrased it, and as the plan itself so plainly provides, "prospectively".

The defendant has cited a number of cases in support of its contrary contentions. Except for Kristt v. Whelan (1957) 4 A.D.2d 195, 164 N.Y.S.2d 239, affd. 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116, which we do not find persuasive in its reasoning, such cases generally involved plans significantly different in language from that here. Thus in Finnell v. Cramet, Inc., (6th Cir. 1961) 289 F.2d 409, 413, the plan specifically provided that, "No Employee prior to his retirement" had any rights under the plan and the employer reserved the unqualified right from the beginning "to modify or amend in any respect or terminate, in whole or in part, this Pension Plan at any time for any reason whatsoever * * *." Parsley v. Wyoming Automotive Company (Wyo. 1964) 395 P.2d 291, 295, another case cited by the defendant, involved a compromise settlement of claims under a voluntary, non-contributory retirement plan. The Court held that, at the time of the settlement the rights of the employee were sufficient to provide a valuable consideration for the compromise settlement. Beyond this, the Court did no more than to advert to the various authorities and to declare that in any event the compromise settlement was valid.

To restate: In our opinion, the District Court correctly concluded that the defendant could not by its amendment of July 21, 1960, prejudice any of the rights of the plaintiff under the pension plan resulting from contributions previously made by the employer.

■ We think, however, the District Court erred in concluding that the plaintiff was entitled to retirement benefits accruing on account of services after the effective date of the amendment of 1960. In reaching its conclusion, that Court held that the forfeiture of retirement benefits provided under such amendment, in the event the plaintiff engaged in competitive employment, represented an invalid restraint, violative of public policy. It assumed that such restraints in a pension plan were subject to the same considerations of public policy as like restraints in employment contracts. The authorities, though, generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans.[8] The strong weight of authority

---

6. See, Siegel v. First Pennsylvania Banking and Trust Co., *supra*, 201 F.Supp. at p. 670:
   "The fact is, however, that the Plan specifically provides that after ten years each participant's interest is vested. If this provision is not to be purely illusory, a remedy must exist to give it meaning. The participant must have the right to enforce the vested interest granted to him; otherwise, it has not been granted."

7. This right of the plaintiff, acquired by the requisite service, is generally designated as deferred full vesting. Since, under the plan, the pension rights increase with added service over the eligibility requirement, these rights are more accurately defined as deferred graded vesting. See, Norman, Private Pensions: A Study of Vesting, Funding, and Integration, 21 U. of Fla.L.Rev. 141, 151 (1968).
   See, also, 70 Col.L.Rev. 909, 910:
   "Rights (under a retirement plan) to which the employee is entitled prior to his actual retirement, and which may be judicially protected if interfered with, are termed partially vested."

8. Brown Stove Works, Inc. v. Kimsey (1969) 119 Ga.App. 453, 167 S.E.2d 693, 695:
   "A restriction in the contract which does not preclude the employee from engaging in competitive activity, but

holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography.[9] The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage. A leading case on this point is Van Pelt v. Berefco, Inc., *supra,* 208 N.E.2d at p. 865, where, in passing on a forfeiture provision similar to that here, the Court said:

"The contributions and distributions of benefits under the retirement plan involved here were made voluntarily according to provisions mutually accepted by defendants and plaintiff. Having admittedly breached the provisions of the plan plaintiff cannot be heard to complain that he is entitled to the benefits thereof, and no question of lack of good faith is presented for our determination as we construe Massachusetts law.

"Commerce Clearing House Pension Plan Reporter, par. 56, 295 states: 'Many plans permit the employer, or the retirement committee in charge of administering the plan, to reduce or terminate benefits in case the employee, after his retirement, engages in any activity which is competitive with or detrimental to the employer's business.' The conditional retirement plan provision in the instant case was designed by the employer to protect against competition by former employees who may retire and obtain post-retirement benefits from them while at the same time engaged in competitive employment. The employer, as part of a non-contributory plan may provide for such contingencies.

"There is no restraint here upon plaintiff's right to future employment. He is free to engage in competition with new Berry without restraint or interference by defendants, but he is not free to do so while accepting benefits of the retirement plan to which he contributed nothing."

It is true there are a few decisions that have found forfeiture provisions similar to that involved here invalid.[10] Such decisions have found support among legal commentators.[11] They rest on the notion that pension rights are in reality earned, though deferred, compensation; and such rights to deferred compensation are not to be forfeited by restraints on competition, which, either in time or geography, are not "reasonable in the light of the interests protected."

The law of Virginia, it would seem, however, is in accord with the weight of authority in giving effect to forfeiture provisions such as that set forth in the 1960 amendment, so far as benefits subsequently earned by the plaintiff are concerned. Thus, in Nationwide Mutual

---

simply provides for the loss of rights or privileges if he does so is not in restraint of trade. Kristt v. Whelan, 4 A.D.2d 195, 164 N.Y.S.2d 239, affirmed in 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E. 2d 116."

9. Jacobus v. Massachusetts Mut. Life Ins. Co. (D.C.N.Y.1950) 91 F.Supp. 674, 680; Gould v. Continental Coffee Company (D.C.N.Y.1969) 304 F.Supp. 1, 3 (dictum, held employment did not conflict); Flynn v. Murphy (1966) 350 Mass. 352, 215 N.E. 2d 109, 110; Brown Stove Works v. Kimsey, *supra*; Van Pelt v. Berefco, Inc. (1965) 60 Ill.App.2d 415, 208 N.E.2d 858, 865; Garner v. Girard Trust Bank, *supra*, 275 A.2d at p. 362; Flammer v. Patton (Fla.Ct.App.1969) 223 So.2d 750,

751; Kristt v. Whelan (1957) 4 A.D.2d 195, 164 N.Y.S.2d 239, aff. 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116; Application of Kumm (1962), 36 Misc.2d 816, 233 N.Y.S.2d 598; Lieberman v. Becker (1959) 38 Del.Ch. 540, 155 A.2d 596, 598 (dictum).

10. See Muggill v. Reuben H. Donnelley Corporation (1965) 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147, 18 A.L.R. 3d 1241. This case, however, was based on a California statute rather than common law.

11. Note, Forfeiture of Pension Benefits for Violation of Covenants Not to Compete, 61 N.W.L.Rev. 290 (1966); Note, 50 Cornell L.Q. 673 (1965).

Ins. Co. v. Tatem (1970) 210 Va. 693, 173 S.E.2d 818, the Court sustained a contractual provision for the forfeiture by a terminated insurance agent of his right to "extended earnings" by entering into competition with his former principal. There is, of course, no difference in principle between the forfeiture of renewal earnings under an insurance agency contract and the forfeiture of future pension rights, both for engaging in competition. The rights of the employee in each instance are equally earned and equally vested. As is to be expected, the cases treat the two situations as governed by the same principles.

The plaintiff would distinguish *Tatem* on the ground that the right of the agent to "extended earnings" was limited in time to one year. The decision, however, was not predicated upon this circumstance. It echoed the reasoning followed in the decisions of other Courts, involving the same issue. See Masden v. Travelers' Ins. Co. (8th Cir. 1931) 52 F.2d 75, 77–78; Barton v. Travelers' Insurance Co. (1909) 84 S.C. 209, 212–213, 66 S.E. 118.[12] That reasoning follows the same line as that expressed in *Van Pelt, supra,* 208 N.E.2d at p. 865. Thus, in Chase v. New York Life Ins. Co. (1905) 188 Mass. 271, 74 N.E. 325, 326, which, like *Tatem,* dealt with the right of a terminated insurance agent to future renewal commissions, the Court summarized its conclusions in these words:

"As the plaintiff sues upon the contract, he must abide by its terms. His right to commissions on renewal premiums depended upon his abstaining from engaging in the business of life insurance in any capacity in the State of Massachusetts. He chose to engage in such business, and we find no agreement in the contract to pay him commissions on renewal premiums in case he chose to become a competitor of the defendant."

The right to renewal commission in *Chase* extended for five years but the fact that it was so limited in time did not enter into the decision: The crux of the decision was that the forfeiture was not a prohibition against engaging in competition but was a limitation on the right to such commissions while engaged in competition.

Applying that rationale, adopted in *Tatem,* to this case, we conclude that the law of Virginia sustains the forfeiture authorized under the 1960 amendment, so far as pension rights accruing in favor of the plaintiff subsequent to the effective date of the amendment are concerned. The Virginia decisions cited in the opinion of the District Court for a contrary conclusion all involved restraints incorporated in employment contracts, which, as we have already observed, are clearly distinguishable from forfeiture provisions in pension retirement plans.

It follows that to the extent the District Court denied the effectiveness of the 1960 amendment as applied to pension benefits accruing to the plaintiff for services rendered after the effective date of the amendment, the judgment of the District Court is reversed.

Accordingly, the District Court is affirmed so far as it grants a declaratory judgment in favor of plaintiff's right to benefits accruing prior to the effective date of the 1960 amendment and reversed so far as it sustained such rights to benefits after that effective date.

Reversed in part and affirmed in part.

12. Cf., Mackie v. State Farm Mutual Automobile Ins. Co. (1968) 13 Mich.App. 556, 164 N.W.2d 777, to the contrary; but, as in *Muggill,* this decision rested largely on a Michigan statute.